IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| EDRINA JONES, *et. al.*, : | |
| : | |
| Plaintiffs, : | Case No. C2-06-1009 |
| : | |
| v. : | |
| : | |
| : | JUDGE ALGENON L. MARBLEY |
| : | Magistrate Judge King |
| MOUNT CARMEL HEALTH : | |
| SYSTEMS, *et. al.*, : | |
| : | |
| Defendants. : | |

**OPINION & ORDER**

**I. INTRODUCTION**

This matter is before the Court on Plaintiffs Edrina Jones ("Jones") and her parents' Motion to Voluntarily Dismiss their medical malpractice action without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2). Defendants Mt. Carmel Health Systems, a/k/a Mt. Carmel St. Ann's Hospital ("Mt. Carmel"), and the American Red Cross of Greater Columbus ("Red Cross") (collectively "Defendants") do not oppose dismissal on the condition that they are permitted to examine Jones and depose her treating pediatric neurologist. For the reasons stated below, the Court **GRANTS** Plaintiffs' Motion to Dismiss without prejudice and without Defendants' proposed conditions.

**II. BACKGROUND**

Jones was born at St. Ann's Hospital in Westerville, Ohio, on October 27, 2004. Shortly after birth, Jones developed ABO hemolytic disease, which required a blood transfusion. During the transfusion Jones went into cardiac arrest, cutting the supply of oxygen to her brain until the

attending neonatologist, Dr. Randy Miller ("Dr. Miller"), resuscitated her.  Plaintiffs allege that Jones went into cardiac arrest because Mt. Carmel's physicians transfused improperly preserved blood that the hospital had obtained from the Red Cross.  Plaintiffs contend that the cardiac arrest deprived Jones's brain of oxygen for fourteen minutes.  Defendants dispute both whether the transfusion was the proximate cause of Jones's cardiac arrest and the extent of her injuries.  Jones was discharged to the care of her parents on November 6, 2004.

On October 28, 2005, Plaintiffs' brought a medical malpractice action in the Franklin County Court of Common Pleas against Mt. Carmel, Dr. Miller, his practice group, and other unnamed Defendants.  Plaintiffs' complaint alleged that as a result of Defendants' negligence: (1) Jones suffers from continuing medical problems; (2) Jones will likely suffer future developmental disabilities; and (3) her parents suffered loss of consortium and mental anguish.  Subsequently, Plaintiffs dismissed Dr. Miller and his practice group and amended their complaint to include the Red Cross.  The Red Cross removed the case to this Court.  On August 3, 2007, Plaintiffs moved to voluntarily dismiss their claims without prejudice.  Defendants object to dismissal without certain conditions.

### III.  STANDARD OF REVIEW

At Plaintiffs' request, the Court may dismiss a case without prejudice "upon such terms and conditions as the court deems proper."  Fed. R. Civ. P. 41(a)(2).[1]  Whether "dismissal should

---

[1]Federal Rule of Civil Procedure 41(a)(2) provides:

> an action shall not be dismissed at the plaintiff's insistence save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent

be granted under the authority of Rule 41(a)(2) is within the sound discretion of the district court." *Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994) (citing *Banque de Depots v. Nat'l Bank of Detroit*, 491 F.2d 753, 757 (6th Cir. 1974)). In the context of a Rule 41(a)(2) motion, it is within the Court's discretion to dismiss the case without prejudice unless "defendant would suffer *plain legal prejudice* . . . as opposed to facing the mere prospect of a second lawsuit." *Grover*, 33 F.3d at 718 (quoting *Cone v. W. Virginia Pulp & Paper Co.*, 330 U.S. 212, 217 (1947) (emphasis added). Ultimately, Plaintiffs' "unilateral right to dismiss a case voluntarily generally exists as long as defendant has not been unduly burdened by plaintiff's suit." Jack H. Friedenthal, Mary Kay Kane, & Arthur R. Miller, *Civil Procedure*, § 9.5 (3d ed. 1999).

## IV. LAW & ANALYSIS

Plaintiffs move to dismiss this action without prejudice because they allege that Jones's physicians cannot adequately detect the extent of her neurological injuries until she matures. Jones is only three years old. Plaintiffs contend that as Jones ages, medical professionals will be better situated to evaluate whether she suffers from any developmental deficits as a result of her cardiac arrest. Defendants acquiesce to dismissal without prejudice only on the condition that they are permitted to examine Jones and depose her treating pediatric neurologist. Without permission to document Jones's present medical condition and preserve testimony relevant to both the cause and the extent of her injuries, Defendants argue that they would suffer plain legal prejudice.

---

adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

In determining whether Defendants will suffer plain legal prejudice, the Court must consider the *Grover* factors: (1) Defendants' effort and expense in preparation for trial; (2) Plaintiffs' lack of diligence in prosecuting the action; (3) the sufficiency of Plaintiffs' explanation for the need to take a dismissal; and (4) whether Defendants moved for summary judgment.  *Grover*, 33 F.3d at 718.  In this case, Plaintiffs diligently moved to dismiss in the incipient stages of the litigation before Defendants filed either a Motion to Dismiss or a Motion for Summary Judgment.  Plaintiffs' explanation is also reasonable.  Plaintiffs are seeking to preserve their claim until a time when medical professionals can more accurately catalogue Jones's developmental disabilities.  The *Grover* factors therefore militate strongly in favor of unconditional dismissal without prejudice.

Defendants counter that they will suffer undue prejudice without conditional dismissal for a myriad of reasons.  First, Defendants contend that Jones has yet to manifest any neurological damage.  Defendants complain that if they are not permitted to document her present condition, they will be deprived of valuable evidence with which to defend a later suit.  But Jones's medical records will presumably be available to Defendants whenever Plaintiffs re-file their complaint.  Alternatively, if Jones's physicians do not document and treat her present condition, then it will undermine Plaintiffs' claim that Jones requires continuing medical attention, which is the lynchpin of their case.  In either scenario, Defendants are not in danger of suffering plain legal prejudice.

Second, Defendants contend that between the time that Plaintiffs' dismiss and re-file this case, Jones could suffer additional neurological injuries for which Defendants might ultimately be liable.  Thus, Defendants argue that they would be prejudiced without the opportunity to

document her present medical condition. Rather than prejudicing Defendants, the risk of intervening injuries actually benefits them. The greater the interval between the alleged injury and the lawsuit, the harder it is for Plaintiffs, who bear the burden of proof at trial, to prove both causation and damages. If Jones suffers another injury between dismissal and re-filing, it would only complicate Plaintiffs' theory that Jones's injuries are solely attributable to the botched blood transfusion. By delaying, Plaintiffs assume the risk that intervening injuries could cloud the causal connection between Jones's cardiac arrest and her cognitive development.

Third, Defendants argue that without deposing Jones's pediatric neurologist, Dr. Jorge Vidarre ("Dr. Vidarre"), they will be unable to preserve his testimony. Defendants worry that because Plaintiffs may re-file this action as late as the year 2023,[2] Dr. Vidarre may be unavailable to testify at trial, depriving them of valuable evidence. But this risk is a function of Ohio's statute of limitations for a minor's medical malpractice claims, not Plaintiffs' motion. Moreover, the danger of losing witness testimony is inherent any time that a plaintiff moves to withdraw without prejudice in order to re-file at a later date. Unlike in other cases, Defendants will presumably have access to Dr. Vidarre's detailed medical records. Accordingly, Defendants are better insulated from the dangers of lost testimony than most litigants. As such, this risk does not amount to plain legal prejudice in this case.

Fourth, Defendants aver that Plaintiffs' expert has failed to produce any evidence that the transfusion proximately caused her cardiac arrest. Indeed, where the law clearly "dictates a result for the defendant, it is unfair to subject him to continued exposure to potential liability by

---

[2] Jones could re-file this action at any time until her nineteenth birthday. Ohio law tolls the statute of limitations for a minor's medical malpractice claims until one year after her eighteenth birthday. Ohio Rev. C. § 2305.16.

-5-

dismissing the case without prejudice." *Grover*, 33 F.3d at 719.  Defendants argue that because Plaintiffs have yet to proffer evidence of neurological damage, Defendants would prevail on summary judgment and are therefore prejudiced by unconditional dismissal.  Plaintiffs however, have no duty at this early stage in the litigation to proffer any evidence of Jones's injury.  Punishing Plaintiffs for failing to produce evidence, even though they were under no duty to do so, would undermine the timetable of production set forth by the federal rules of civil procedure.  More importantly, it would be unjust.

Fifth, Defendants accuse Plaintiffs of opportunistically seeking dismissal so as to obstruct the discovery process.  This is unpersuasive.  Courts encourage plaintiffs to move for voluntary dismissal earlier rather than later in the litigation process so as to conserve the resources of both the litigants and the judiciary.  *See Grover*, 33 F.3d at 718.  Accordingly, any plaintiff moving for voluntary dismissal before summary judgment will not only obstruct but terminate the discovery process.  In so far as Defendants object that the timing of Plaintiffs' motion curtails discovery, it is merely a by-product of a legal regime that encourages early voluntary dismissals and does not amount to plain legal prejudice.

Finally, Defendants rely upon a number of easily differentiated cases.  In *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7tha Cir. 1994), plaintiff sought dismissal of a four-year-old suit because the district court had ruled unfavorably on plaintiff's pre-trial motion.  The Seventh Circuit affirmed the denial of plaintiff's motion to dismiss because "unfavorable rulings by the district court [are] not an acceptable basis to grant Tolle's voluntary dismissal or to facilitate the search for a perceivably more favorable state judicial climate." *Id*.  Here, Plaintiffs moved to

dismiss before either extensive discovery or an unfavorable ruling.  Additionally, unlike the movant in *Tolle*, Plaintiffs' purported reason for dismissal is eminently reasonable.

Defendants also rely on *Elbaor v. Tripath Imaging Inc.*, 279 F.3d 314, 319 (5th Cir. 2002), in which the trial court held that dismissal without prejudice was inappropriate as it would strip defendants of a valuable statute of limitations defense.  *See also Rosenthal v. Bridgestone/Firestone, Inc.*, 217 Fed. Appx. 498, 500 (6th Cir. 2007) (stating that courts "readily find plain legal prejudice where dismissal results in stripping a defendant of an absolute defense").  But a dismissal without prejudice in this case would not strip Defendants of an absolute defense.  Defendants challenge Plaintiffs' theories of both causation and damages.  Rather than strip Defendants of either defense, as discussed above, dismissal could only strengthen Defendants case by further attenuating the link between Jones's cardiac arrest and her development.

Defendants also appeal to *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2nd Cir. 1990), where plaintiff moved for voluntary dismissal on the "very eve of trial."  The court denied the motion, noting that the action had been pending for over four years, extensive discovery had taken place, and plaintiff agreed to a firm trial date.  *Id*.  As such, plaintiff's motion came "far too late."  *Id*.  Here, Plaintiffs moved to dismiss with due diligence before Defendants expended significant resources to litigate this case.  Ultimately, because Defendants will not suffer plain legal prejudice and the *Grover* factors militate strongly in favor of voluntary dismissal without prejudice, the Court rejects Defendants' proposed conditions on dismissal.

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion to Dismiss without both prejudice and Defendants' proposed conditions.

**IT IS SO ORDERED.**

                                                                              **s/Algenon L. Marbley**
                                                                   **ALGENON L. MARBLEY**
                                                                   **UNITED STATES DISTRICT COURT**

**Dated: January 24, 2008**